Good morning and welcome to the Ninth Circuit. Before we begin, Judge Friedland and I would like to welcome and to thank Judge Hillman who is here helping us this week from the District of Massachusetts. Welcome and thank you. Thank you. Welcome. And we've got two cases that have been submitted on the briefs, United States v. Vortman and Flores v. Barr. We've got four briefs, and we look forward to your argument when you're ready. Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Deandre Brown, and I intend to reserve about two minutes for rebuttal. Okay. Your Honors, in Mr. Brown's first appeal, this Court vacated his sentence because the district court had violated the parsimony principle, that the sentence be sufficient, but no greater than necessary. Nevertheless, on remand before a different district judge, the government argued that the Court should reimpose the identical 360-month sentence, and that's exactly what Judge Mendez did, repeatedly citing Judge Damrell's prior decision as the basis for imposing a 360-month sentence. That was error, as was the district court's presumption that a guideline sentence should apply. So we'd ask that resentencing again be ordered in this case. So much of this... So what exactly did the new sentencing judge say with respect to Judge Damrell's action and reasoning? What did he say to which you object? So, just kept referring to, well, and I'd have to pull the excerpts to quote it, but he repeatedly cited to the judge having been the trial judge, he was in the best position to determine what the appropriate sentence was. And so based on that, he was simply going to follow it. And over the course of, on pages 25 through 29 of the by my count, at least 10 different times, as why he was going to impose the identical 360-month sentence. So, and, you know, one of the things that he said was, yes, well, Judge Damrell's decision was critical information. And we certainly don't dispute that the Court could consider what Judge Damrell had said at the prior sentencing. The problem is the deference being so great. And this is what the Court chose to do. The government expressly asked that the Court defer to Judge Damrell's sentence. And in fact, actually tried to recast what this Court had actually ruled when it said that the prior sentence had violated the Parsevalian principle and actually suggested that the Court may have got it wrong and that there may have been a transcription error that was the basis for this Court's decision. So it totally attempted to minimize what this prior Court's ruling was and asked the Court to completely ignore the fact that there was a violation of the Parsevalian principle. And in addition, of course, this Court, because it was already remanding for the Parsevalian principle error and the Rule 32 error, chose not to address several other sentencing errors that we had raised, which also formed the basis for Judge Damrell's now-discredited decision, such as the fact that Mr. Brown going to trial for the Parsevalian principle error forced these victims to have to testify. So essentially, it was blaming Mr. Brown for going to trial and took that, held that against him. Decided to characterize his request for a sentence below the guidelines as a departure and told Brown to have to justify why a departure was necessary, even though, of course, departure was not what was required. So there were many problems with Judge Damrell's decision. So we argue it was wholly inappropriate for Judge Brown to actually defer to that. The Court also seemed to presume that the guidelines were the presumptive sentence, that since the guideline range was 360 to life, that the Court needed to impose a sentence in that range, essentially unless Mr. Brown could establish why that was not appropriate. But that's, of course, not how a federal sentence scheme works post-Booker. Yes, of course, the District Court is required to consider the guidelines, to correctly calculate the guidelines, but this Court and the Supreme Court has made very clear on multiple cases that it's just one factor amongst all of the other factors that the Court is required to consider. And yet, the government argued no reason to depart below the guidelines, so the government put the departure language into the Court's head. And the Court said, you know, you're asking for a 10-year reduction below the guidelines. He was then corrected, no, we're asking for a 15-year sentence, and said, oh, so you're asking for a 50% reduction below the guidelines. So again, the Court seemed to presume... I don't understand what's wrong with that. I mean, Judge Mendez calculated the guideline sentence, the parties agreed what the guideline was, and doesn't that indicate that he's using it as the starting point, not the presumptive... Well, we believe that all of his other comments indicate that he treated that as the presumptive sentence that should be applied, except in unusual or extraordinary circumstances. I just don't know how you're getting there, though. I mean, he said, I think the sentence of 360 months is appropriate in this case under all the circumstances, and he talks about balancing the mitigating factors and the defendant's life history. I mean, he's talking about the right things. He does talk about the sentence, but we say he... the guideline sentence, but he has to calculate the guidelines rate. That's right. We're not suggesting that he wasn't supposed to calculate the guidelines. Yes, he was supposed to calculate the guidelines, but then he's supposed to take into consideration all of the other factors, including the factors, the mitigating factors that the defendant had presented at the original sentencing hearing. You know, the probation office said, we've looked at all these factors. We've compared this case to all of the other cases involving this crime in the Eastern District of California, and we don't believe that a 360-month sentence is appropriate. But the judge doesn't have to agree with that. Doesn't have to agree with it. Certainly not. But it's certainly among all of the different factors that the Court has to weigh, and it's supposed to weigh them somewhat equally. He did acknowledge the mitigating factors in arriving at the sentence on the record. He did, though he made no reference when he ultimately imposed the sentence to why the 300-month sentence was not appropriate or why the 15-year sentence that Mr. Brown had. He doesn't have to do that. Well, we believe that he does. The courts have made clear that when a defendant makes reference to essentially a departure claim or a claim outside the guidelines, and it's not a frivolous argument, and here, certainly not a frivolous argument, that the Court is obligated to, in fact, indicate why it chose the sentence it wanted to, it did impose, as opposed to the other possible sentences that the defense had asked for and, in this case, the probation office had asked for. I'd also like to briefly note, regardless of the remanding for complete resentencing, there's also significant problems with a couple of the supervised release conditions that were imposed here. The Court imposed a complete computer and Internet ban. Subject to permission by the parole officer. That's correct. Now, in the cost, this Court said the fact that it leaves that open doesn't matter because we don't know if the probation officer would ever grant permission. And here in the pre-sentence report, the probation officer actually said that a ban on all computer use is appropriate here. So it seems to me that this issue was on plain-error review, but I know you have a footnote that says it shouldn't be because the judge didn't sort of remind everyone about what the supervised release conditions were going to be. Can you explain that argument and do you have any case support for the idea that that would get you out of plain-error? I don't have case support, Your Honor, other than common sense. I mean, the fact is, the Court did not actually read any of these conditions. The Court simply did. But was there any surprise? I mean, was there any reason to think that the conditions weren't going to be the same as before? I don't know, Your Honor. I mean, again, there was a pre-sentence report. The pre-sentence report was written nine or ten years earlier. So it was a long time between the original sentence when these conditions were initially imposed and when they were then reimposed. So maybe there should have been an objection. Could you tell us what conditions are being? I mean, it seems like you have an obligation to make some sort of objection. That I don't disagree, Your Honor. Yes, perhaps defense counsel should have actually made an objection, at least to say perhaps we should continue it so we can look at these conditions. Yes, no, that's certainly true. Regardless, though, in LaCoste, LaCoste was a plain error case as well. LaCoste said, look, when it comes to banning Internet use, Internet is so essential in today's society. It should be an extraordinary circumstance where we would limit Internet use. Here, the conditions beyond Internet use, it's banning all computer use whatsoever. But I understand your argument to be more of a Wolfchild argument that heightened procedures were required before imposing this condition. Well, certainly because it raises significant First Amendment concerns that heightened scrutiny should apply. But regardless of whether you have the heightened scrutiny or regular scrutiny, the fact is it is a greater deprivation of liberty than is necessary. A more tailored condition could have been imposed to deal with the specific concerns that the court and the probation officer had with respect to posting on websites. It could have simply limited him from posting on any websites, but a complete computer man goes too far. And I see I only have a few seconds. Well, I'll give you two minutes. I appreciate it. Your Honor, may I please accord Michael Beckwith on behalf of the United States. I was both trial counsel and appellate counsel in this case. Maybe we can move this along quickly with respect to the conditions. Do you contend that these conditions, quite aside from plain error for the moment, are proper? No, Your Honor. With regard to Condition 6, this is an absolute ban on Internet use. But as this court found in Lacoste, in certain circumstances, such bans are permissible. So as occurred in Lacoste, when you have... So you say this condition is okay? Yes. Yes. And we say it's okay, first, because under Lacoste, this court has recognized that absolute bans are appropriate in limited circumstances that exist in this case. First, when sexual abuse of a minor is involved and when Internet use was integral to the crime, as it was here. As you know, Mr. Moss posted... I'm sorry, Mr. Brown posted regularly saying, I've posted you. You all got that? You're posted again. This was part and parcel to his crime. And so in the facts of this case, we recognize the severity or the significance of this condition. But in the facts of this case, given his integral use of the Internet in his crime, given the sexual abuse of the children... And is there some obligation on the part of the district judge to explain that this is a special circumstance justifying the ban? No, Your Honor. I think in light of the court's finding in Lacoste, I think that the ban in and of itself is permissible. And here, it was actually tailored a bit because it's an absolute ban except for when the probation officer... except for conduct that is allowed by the probation officer, such as lawful conduct. And so there's a limited tailoring of an absolute ban in this case. So it's actually not an absolute ban. It's somewhat more narrowly tailored to the facts. No, I thought in, I think, page 47 of your brief that you might have been conceding that it should really just be a ban on Internet-related computer use and not all computer use. It sounds like you're changing that now. No, no, no, no. I believe the condition is focused solely on Internet use. But I don't think it says that, does it? If you look at the condition, Your Honor, our interpretation of it is it says the defendant shall not possess use of a computer or any device that has access to any online computer service. And so, as the court has done in the past, I think Quinzon is an example, Reardon is an example. When there is language in the condition itself or other related conditions that focuses on the Internet, I think it can be interpreted to mean Internet. Sorry, I think I misstated my question. There's also the monitoring issue. And I thought maybe you were saying the monitoring would just be of Internet use. Yes, yes, that's Condition 8. So with regard to Condition 8, yes, we're asking that the court interpret that condition to be limited to only Internet use. And as the court did in Quinzon, which I think is really a very comparable case to this situation, that is a broad condition that mentions monitoring broadly. But in light of Condition 6, which we think is an appropriate, lawful, and clear condition, that monitoring can be interpreted to mean only Internet use. And that is our position. And do you think that's so clear that, like under Nerke and Pedd, that say when something is so clearly what the district court meant, we can just do it ourselves if we're in that situation? Or do you think we need to remand on that? I think Pedd is actually very helpful for us. And I think it is that. I think that because it draws a very clear line. And this is clear enough, especially in light of Condition 6, that we are talking about and asking the court to consider this only with regard to Internet use. Otherwise, it would be too broad. I think with regard to the monitoring condition itself, also this court has recognized that as technology advances, what that monitoring actually looks like at the time when Mr. Brown is released may be very different. And so we don't need specificity in the actual condition. And it really can't, it wouldn't be fair to give it now when we expect a release years from now. And so I think the general statement of monitoring, if it's interpreted that way, is a reasonable condition that can be narrowly tailored in light of Condition 6. And the court's, I think, clear intent from the record to focus on Internet use because that was what was part and parcel to the crime. But the way that Condition 6 is phrased, it's a computer that has access to, now I'm not much of a computer expert. And I gather that what's desired is that you don't actually use the Internet. But a computer that has the capacity to connect to it is, you can't use that. Is that what that says? Yes, that's what that says, Your Honor. Does that mean that, is it possible for someone to have a computer that complies with the condition that nonetheless allows them to do email? How is that, and just to build on that, how is that, that's almost, not almost, it's unenforceable. This is why we need Condition 8, Your Honor, the monitoring condition to be able to enforce Condition 6. These two conditions go hand in hand. But I'm trying to understand what Condition 6 means. Meaning, does that mean that, is there such a thing as a computer that complies with Condition 6 that allows them to do email? Is there, I'm sorry, I just didn't understand the question. Is there such a thing as a computer that complies with the Condition 6 that allows them to do email on that computer? With regard to Condition 6, if the probation officer were to permit lawful use, then yes, he could use email. No, I'm not talking with respect to permission by the probation officer, because that's a way of getting around the prohibition. Let's just take the prohibition as a prohibition. Is it possible for him to have a computer that does email? No. Whoa. Under the condition, it is an absolute ban of, if email uses the internet, yes, that would be. Well, that's my question, and I'm not a computer person, but my guess is that if the computer complies with Condition 6, he can't do email. And I think you just said that's your view as well. If it connects, if it goes through an online email server, then that would be connecting to the internet. That's a pretty severe condition. It is, Your Honor, and under these circumstances, as stated in Lacoste, that severe condition is appropriate because of the sexual abuse of the minors and because of his use of the internet. Yeah, but it was not his use of emails. It was his use of the internet. I mean, what bothers me about this one is that nobody seems to have paid much attention to it in the district court, and maybe it's justifiable, although I'm not sure it's justifiable given the breadth of the prohibition. Yes, Your Honor. If the goal is to limit internet use because that was part and parcel to the crime, it's a fair question that you ask, and the way that the condition is worded, if you were to use an internet-based email, then that would be impermissible. Is it such a thing as a non-internet-based email? Like you, I'd have to look into that, but if it does connect to the internet, that's what the prohibition says, but it is limited and tailored by, can be, lawful use can be permitted by the probation officer. So we do think, even though an absolute ban of connecting to the internet, which would include the example that you've given, is permissible in this case on these facts. Your Honor, I'd like to turn... I thought that was going to be the fast part of the case. I guess I was wrong. Sorry. Well, I would like to address a question that you had earlier for the defense, Your Honor, with regard to the sentencing. Specifically, you asked, what did the judge say? And that's critical here, and that's critical. And so there are a number of things that I would like to point out. First and foremost, we recognize that we may have made an inartful statement in asking for deference, but that statement was corrected on the record. Later, at ER 23, the government said, Your Honor, you're free to do whatever you feel is appropriate here. The defense said the same thing to the district judge. Quote, you're entitled to make your own independent judgment. And of course, a district judge will do that. And that's exactly what he did here. After considering facts that Judge Damrell did not have, including A.A.'s written statement, A.A.'s oral statement, where he had a chance to look at her, consider her demeanor, and hear what she had to say about her mental and emotional state and what Brown did to her. He had a chance to consider the defendant's post-conviction conduct, which was detailed in the papers. And he was able to consider the defendant's lack of contrition. As the letter that the defendant sent to the court, he said, I was lied on. I'm not the man the government claims I am. And he says, as I stand here today, to this very day, I stand firm on not being the person the government claims. So there were facts first that were presented to the resentencing judge that did not exist for Judge Damrell. And then with regard to what he said, he explained his reasoning and made four balancing statements. First, he balanced the other sentences against the nature of the crimes, noting that those crimes were horrific. He said that he was of the same ilk as Judge Damrell, which means they're in agreement. Not that he's following him blindly or rubber stamping him. He said, I am of the same ilk. I'm in agreement. Reasonable minds, independent reasonable minds, can differ and they can agree, as they did here. He also balanced criminal history with the nature of the crime, noting a need to protect the public from Brown, and commenting on A.A.'s oral testimony at the resentencing. He said that Brown seemed to have some kind of Manson-like influence over women, and that comment stuck with him. And finally, he also looked at unwarranted disparities in the cases and compared those to the guidelines, finding, again, that it wasn't the number of victims, but actually the violence and the type and nature of the offense that really drove him. He actually said, I looked at the pictures. They turn your stomach. It shocks the conscience. And he indicated that, in this case, the defendant was lucky that he was going to agree to a 36-month, a 360-month sentence, indicating that he might go up. And so we believe the judge made a clear, independent finding on horrific facts. It was not barred or it was not rubber stamping what Judge Damrell did. Okay. Your Honor, unless you have further questions, we'd ask you to affirm all aspects of the sentence in this case. Thank you for your time. Okay. Thank you. Now, we took you up to the end. Would you put two minutes on the clock, please? I appreciate that, Your Honor. With respect to the supervised release conditions, quickly, the monitoring condition, let's be clear. Kinzon, the Court said, we're going to interpret the condition to only apply to Internet-related activity because if you look at all of the conditions together, it's very clear the Court intended the condition only to apply to Internet-related activity. That's not what we have here. In fact, the conditions here are very clear that there's a complete Internet ban. And in fact, based on what the probation officer said in the present report on paragraph 120, the condition should include no computer access whatsoever. So not merely Internet access, but no computer access at all. So the monitoring condition was not intended to only apply to Internet conditions. Well, the government is now saying that it did, so why don't you just take that? Why are you arguing against something they're giving you? What we're saying is, Your Honor, that they're misinterpreting. They're trying to then take that to say, well, the first condition is only limited to Internet. We're saying it's beyond just Internet access. The Court, the conditions, in fact, completely limit all computer access whatsoever. And so while banning Internet access is certainly a greater deprivation of liberty than necessary, all computer access, banning all computer access, is even worse than that. There's absolutely no reason to say that this individual cannot use a computer. Computers are absolutely essential, and to say that because this case, this was a pimping case, let's be clear. So this is not your typical sexual molestation of children case. This is a pimping case that involved a 16- and 17-year-old, 16- and 17-year-old prostitutes. They were prostitutes before they met Mr. Brown. They were prostitutes after they stopped working for Mr. Brown. This is not the same type of situation that this Court has dealt with in which Internet bans have been dealt with in the past. So we think this is a completely different ballgame in that a computer ban is just not appropriate here. And with that, I thank the Court. Okay, thank you very much. Thank both sides for their arguments. United States v. Brown now submitted.
judges: W. Fletcher, Friedland, Hillman